[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This action was instituted by the plaintiff John Coughlin against the defendant Cara Coughlin seeking a dissolution of their marriage. The parties are both in their mid to late thirties and were married on June 16, 1984 in Hamden, Connecticut. Both parties have resided in the State of Connecticut for at least twelve months prior to the filing of the complaint. Four children are issue of the marriage: Crystal Coughlin born June 23, 1985, Jessica Coughlin born April 28, 1987, John Coughlin, Jr. born September 18, 1989 and Kelly CT Page 1035 Coughlin born February 23, 1991. No other children have been born since the date of the marriage. The court finds that the parties' marriage has broken down irretrievably and that a decree of dissolution should enter on this ground.
The plaintiff graduated from Eli Whitney Technical School in 1978. At the time of the marriage he was working as an electrical contractor, but had not yet become licensed. The defendant is a high school graduate and at the time of the marriage was working for ACES as an aid and a van driver. The defendant became a full time housewife after the birth of Crystal and did not work outside the home.
In 1983, prior to the marriage, the parties jointly purchased a multifamily home using money from their own savings and from the relatives. In 1987, defendant became dissatisfied with lack of security, low pay, and inadequate benefits received from plaintiff's electrical work with his brother. She acquired for the plaintiff an application for a position with the East Haven Fire Department. In 1987, the plaintiff received this position as a fireman and has remained employed in this position ever since. During the course of the marriage, the plaintiff also obtained his electrical contracting license and pursued this work in addition to his employment as a fire fighter. During the marriage the defendant assisted the plaintiff in this electrical contracting business, for example, by picking up materials, scheduling work, and handling paperwork.
During or about 1987, the defendant also became dissatisfied with their residence in New Haven. She was often alone because of the plaintiff's work schedule and had concerns about the neighborhood's safety. In 1988, the New Haven property was sold at a substantial profit which allowed the parties to build their existing marital home in East Haven, Connecticut. The equity value of the East Haven property is found to be $100,000 at the present time.
According to the plaintiff's testimony, the parties' marriage was persistently characterized by the defendant's complaints and dissatisfaction about their living standard and conditions. He testified that he was required to work two jobs in order to support the household, and despite his best efforts, the defendant remained unhappy. During or about 1992, the plaintiff accused the defendant of having an adulterous affair. According to his testimony, she eventually stopped denying the accusation CT Page 1036 which he believed was true. The defendant denies having any affair during this time period. Both parties agree that after the birth of their last child in 1991, their relationship began to deteriorate substantially. Plaintiff testified that the defendant began staying out very late at night during the summer of 1995. In November 1995, she took a trip to Florida by herself to visit family. However, he subsequently learned that a friend of hers named Peter Ryan was also in Florida during this period of time and he began to suspect that a relationship existed between Ryan and his wife. When she returned from Florida the marital relationship deteriorated further. She began to spend more time away from the home. The plaintiff eventually confirmed, through her admission, that the defendant was having an affair with Peter Ryan. This dissolution action followed.
The defendant admits that she had an intimate relationship with Peter Ryan lasting several months in the spring of 1996, but maintains that the parties' marriage irretrievably broke down after the birth of their last child in 1991. She testified that her primary complaint during the marriage was that the plaintiff incessantly worked and was rarely home. She maintained a monthly calendar to record and confront the plaintiff with the days he was not home. She attempted to talk to him about this problem and even suggested counselling, but he was unresponsive and uninterested in addressing the issue.
The court finds the defendant's testimony to be more consistent and credible then the plaintiff's testimony, except as it pertains to the specifics of her relationship with Peter Ryan. The court concludes that this relationship was at least more emotionally extensive than as described by the defendant. The court further finds, however, that both parties contributed to the breakdown of the marriage. The court credits the defendant's testimony concerning the plaintiff's absence from the home, the resulting lack of affection and companionship, and plaintiff's insensitive response to the problem. This lack of attention and affection appears to have prompted the defendant to seek to fill these needs outside the home. The court finds no credible evidence that defendant had an affair between 1992 and 1993, but finds that the defendant's affair with Peter Ryan in 1996 caused the irretrievable breakdown of the marriage. While the defendant was willing to attempt reconciliation even after this relationship with Ryan, the plaintiff was unwilling to do so.
The plaintiff's testimony concerning his earnings was CT Page 1037 incomplete and inconsistent. For example, he failed to provide any specific information satisfactorily explaining his yearly gross earnings and expenses for his electrical contracting business. He failed to explain fully the overtime pay he receives from the fire department or why he has a tenant residing at his home without charging rent. He has a mutual fund that he failed to list on his financial statement. His financial statement also shows expenses exceeding his income by more than $13,000, without any listing of the pendente lite orders which he has paid on a timely basis. The court finds that in addition to his fireman's salary of approximately $40,000 or $50,000, he also has a capacity to earn at least $15,000 to $25,000 a year gross from his electrical contracting business.
The court did not receive any direct evidence about the value of the plaintiff's electrical business. The evidence does indicate that the business primarily consists of the plaintiff's tools and work materials, which have minimal value ($1,000 according to the plaintiff's financial affidavit). The evidence also indicates that much of the plaintiff's work involves single instance heating installations or repairs. The court concludes that any significant value of the business is almost entirely derived from the plaintiff's own individual skill and goodwill to an extent that the business has little or no value exclusive from his own personal efforts.
The plaintiff also has a mutual fund valued at approximately $2,000, and a pension from his employment as a fireman. Although the plaintiff testified that he did not know the value of his pension, on the basis of the limited evidence that the value of the pension is based on the plaintiff's salary, the court finds that the pension has a present value of approximately $49,000.
In regard to the defendant, she presently works part time and earns approximately $224 a week. She did not provide a satisfactory reason why she cannot work full time. The defendant has medical problems with her back and hand, but these problems do nor substantially impair her earning capacity at the present time. The court finds that she has a yearly gross earning capacity of between $15,000 and $20,000 a year.
The court having considered the parties' claims for relief in light of this evidence and the statutory criteria, enters the following orders: CT Page 1038
Alimony
1. No periodic alimony shall be paid to either party, the court placing emphasis on the cause of the irretrievable breakdown of the marriage and the orders of property distribution hereafter issued. The plaintiff does not make a claim for alimony.
2. The plaintiff shall provide and pay for the defendant's health insurance until May 31, 1998.
Custody
The parties shall have joint physical and legal custody of the minor children in accordance with the April 9, 1997 pendente lite order issued pursuant to the parties' agreement. This agreement provides: that the parties will share physical custody of the children on an equally divided basis of alternating three day periods to accommodate the plaintiff's work schedule with the fire department; that holidays shall be shared in consideration of the plaintiff's work schedule; and that each parent shall have one week of uninterrupted vacation time with the children each year which the parties will arrange in advance.
Child Support
1. The plaintiff shall pay child support to the defendant in the amount of $50 a week for each child for a total of $200 a week. The child support shall be reduced by $50 a week as each child completes the twelfth grade or attains the age of nineteen, whichever first occurs. The support shall be paid through a wage withholding payable to the defendant.
The plaintiff's claim that the shared custody arrangement relieves him from having to pay any child support is meritless as a matter of law on the basis of the parties' legal support obligations and their respective financial abilities. On the other hand, the defendant's position that she should receive support based on a child support guidelines computation that views her as having full time, physical custody of the children is also meritless in light of the parties' shared custody arrangement. This shared custody arrangement justifies a deviation from the guidelines, and the child support award of $200 a week represents such a deviation based on the shared custody arrangement and the parties' respective earning CT Page 1039 capacities.
2. The plaintiff shall provide for health and dental insurance for the minor children through his employment at reasonable cost and the parties shall equally split any uncovered unreimbursed health, dental or similar medical expenses.
3. The plaintiff shall maintain life insurance for at least $100,000 designating the minor children as irrevocable beneficiaries so long as the support obligations are in effect.
Property Distribution
1. Real Property
The plaintiff shall receive ownership of the property at 22 Leigh Drive, East Haven, Connecticut and shall hold the defendant harmless from the mortgage, taxes and insurance regarding the house. The plaintiff shall pay the defendant $65,000 representing 65% of the property's present net equity; $25,000 of this amount shall be paid no later than May 31, 1998; and if not sooner paid, the balance of $40,000 shall be paid when the youngest child turns 19, when the property is sold, or when the property is no longer the plaintiff's primary residence. Beginning June 1, 1998, interest shall accrue on the unpaid balance at the rate of 7% a year. If the total award has not been paid when the youngest child turns 19, than the property shall be sold and the unpaid balance plus interest shall be paid from the net proceeds of the sale. The defendant shall be entitled to secure any unpaid amount of this award as a lien on the property located at 22 Leigh Drive, East Haven, Connecticut, which lien shall be made subordinate to any financing used by the plaintiff to pay this award. The plaintiff shall maintain homeowners casualty insurance on this property for at least $65,000 and shall name the defendant as a beneficiary for the extent of any unpaid balance of this award.
2. The defendant shall receive fully her ownership interest in the Florida condominium.
Personal Property
1. The plaintiff shall receive full ownership of his electrical business and mutual fund. CT Page 1040
2. The defendant shall receive $20,000 of the plaintiff's pension from his employment with the East Haven Fire Department. This $20,000 division shall be accomplished through a Qualified Domestic Relations Order or such other documents consistent with the terms of the pension plan. The defendant's counsel shall prepare such for the court's consideration as necessary.
3. The defendant shall receive full ownership of the 1988 Lincoln Town car and shall hold the plaintiff harmless for any liabilities or expenses relating to this vehicle.
4. The defendant shall receive the children's baby clothes, her father's belongings her mother's belongings, and the children's Precious Moment Set. The parties shall split the other photo albums and home videos. The parties shall retain respectively all other personal property in their names and possession.
Attorney Fees
The parties shall be responsible for their own attorney fees.
Remaining Liabilities and Claims
The plaintiff shall hold the defendant harmless with respect to the Bernie's account and personal loans shown on his September 2, 1997 financial affidavit. The defendant shall hold the plaintiff harmless with respect to the Steinbach, J. C. Penney, Discover card, Lechmere, Amoco, Express and Filene accounts as shown on her September 3, 1997 financial affidavit. The parties shall divide equally the First USA Visa and Citibank Mastercard accounts.
The court has considered the parties other claims for relief as requested in their proposed orders, and they are denied.
So ordered.
This 26th day of January 1998.
Stevens, J.